**UNITED STATES of America**

v.

**Joseph E. PALMER, Appellant.**

**No. 71–1505.**

United States Court of Appeals, District of Columbia Circuit.

April 11, 1972.

Mr. Allen M. Hutter, Washington, D. C. (appointed by this court) was on the brief for appellant.

Messrs. Harold H. Titus, Jr., U. S. Atty., John A. Terry, Brian W. Shaughnessy, and James F. Flanagan, Asst. U. S. Attys., were on the brief for appellee. Mr. Thomas A. Flannery, U. S. Atty. at the time the record was filed, also entered an appearance for appellee.

Before McGOWAN, LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant was convicted of two narcotics offenses—possession of narcotic drugs not in the original stamped package (26 U.S.C. § 4704(a)) and receipt and concealment of narcotic drugs, knowing the same to have been imported contrary to law (21 U.S.C. § 174)—and sentenced to concurrent terms of imprisonment of one to five years, respectively. His appeal contends that he was prejudiced by the failure of the Government to introduce three sport coats into evidence in which *some* of the narcotics were found and by the instructions given on constructive possession. He also contends that the Government should have introduced the contents of a search warrant which allegedly showed that some person other than appellant had been selling narcotics from his apartment. We see no necessity for oral argument and affirm the convictions on the briefs and record.

I

On May 4, 1970, police officers executed a search warrant for a four-room apartment with respect to which it was stipulated that appellant was the sole lessee. No person was in the apartment at the time of the search. The search uncovered narcotics in six separate locations in the bedroom: (1) in a front room closet on a top shelf narcotics were uncovered in a piece of tinfoil in a Kotex box; (2) tinfoils containing narcotics were also discovered in the closet in a blue denim sport coat, (3) in a green sport coat, and (4) in a charcoal colored sport coat; (5) an additional large piece of tinfoil containing two smaller foil packets of narcotics were discovered near some strainers in a double dresser. Appellant's photograph and other papers and bills belonging to appellant were discovered in the same dresser drawers. (6) Another packet of narcotics was found on the nightstand in the bedroom.

In addition to the narcotics found in the bedroom, gelatin capsules were found in two locations in the front room and various white powders, subsequently identified as sucrose, dextrose and barbital sodium, were also found in the front room of the apartment. An expert witness testified that those who prepare narcotics for street use mix su-

crose, dextrose and barbital sodium with heroin to dilute it before packaging it in tinfoil packets or gelatin capsules.

Appellant testified in his own defense and denied the use of narcotics,[1] knowledge of the narcotics and of the narcotics paraphernalia, and ownership of the sport coats. The defense also introduced testimony by a friend (Slade) who stayed in appellant's apartment while he was away in order to protect costly electronic equipment that was kept there. Slade testified that he stayed in the apartment from Friday, May 1st, until the afternoon of May 4th, while appellant was absent in Philadelphia. On Monday afternoon, according to Slade, a prior friend known only to him as "Preston" came to the apartment, opened a bag and began to spread various jars containing white powder, capsules, tinfoil and other items *on the floor* and said it was "dope." Shortly thereafter Slade looked outside and saw that appellant was returning from Philadelphia and told Preston that he would have to "get rid of this stuff." Preston then, according to Slade, quickly went about the apartment placing the various items in dresser drawers and on the nightstand. Appellant then entered his apartment while Preston was there and the three left together. The search of the apartment occurred shortly thereafter.

## II

One of appellant's contentions on appeal is that the Government's failure to produce the three sport coats in which some of the drugs were found was prejudicial error since such evidence was necessary to show appellant's dominion and control over the drugs. It was, however, open to the jury to reach that conclusion from the presence of the narcotics in appellant's apartment under the circumstances here presented. The sport coats were in the bedroom closet in an apartment of which appellant was the sole lessee, and on the evidence introduced at trial it was as permissible for the jury to find that the sport coats were in the constructive possession of appellant as it was to reach the same conclusion with respect to the narcotics. It might have made a stronger case if the sport coats had been introduced into evidence or if there had been some testimony from which it could have been inferred more strongly that the coats belonged to appellant but, in the absence of any showing that the coats themselves would somehow tend to disprove the Government's case or that testimony concerning them was suppressed or incorrect, we do not see that it was necessary for the Government to introduce the coats themselves into evidence. Appellant knew from the Government testimony that three packets of narcotics had been found separately in three sport coats and he could have obtained the coats[2] and he introduced them into evidence. Since appellant took the stand and denied owning any of the jackets or knowledge of the drugs found therein, there would have been no further difficulty for him to testify further as to sizes or to use the coats in demonstration proof. The coats were equally available to both parties to introduce[3] and on the showing here we do not find that any error, prejudicial or otherwise, was committed by the Government in not offering the coats into evidence. We note that the Government made no point in argument to the jury that appellant had not availed himself of the opportunity to subpoena the coats and try them on, but the defense did point out to the jury that, "These coats were not introduced into evidence."

We thus fail to countenance a claim of prejudicial error based entirely on the evidence which was available to appellant at trial and which he made no attempt to introduce. There was nothing

---

1. Police Officer Spriggs testified in rebuttal that appellant told him the night he was arrested that he snorted heroin now and then.

2. Fed.R.Crim.P. 16.

3. *Id.*

secret about the fact that three packets of narcotics were found by the Government in the three sport coats. Thus appellant had alternative choices. He could subpoena the coats, introduce them and possibly demonstrate whether they fit him or not, or he could stand on his denial that the coats were his. He followed the second course and since he was not foreclosed from following the first course we find no error in this respect in the trial.

On the claim of prejudice, we also note that three other packets of narcotics were found *elsewhere* in appellant's bedroom; in a box in the closet, on the nightstand, and in the dresser. So there is ample evidence to support the conviction apart from the dope found in the sport coats.

## III

■ Appellant also attacks the instructions given by the trial court on constructive possession. On this phase of the case the judge gave the standard District of Columbia Bar Instructions on actual and constructive possession. He also gave an example of constructive possession.[4] Appellant contends that this example was incorrect and misleading to the jury because it instructed the jury "that there was constructive possession after the article was stolen [and] would very likely lead the jury to believe that no matter how the article, in this case the drugs, came into appellant's apartment, even by stealth and unknown to appellant, he had constructive possession of them."

However, we do not consider the construction he asserts to be a fair reading of the instruction since the instruction did not make any reference to the effect that the theft would have on the owner's possession. It merely pointed out that while the owner was in bed he had constructive possession of articles of his which were *on the bureau*.

■ Secondly, since appellant did not object to the instruction at trial he cannot raise it now on appeal. The trial court afforded him an opportunity to object or to make a request for additions or revisions and he did not do so. It is too late to do so at this time, Fed.R. Crim.P. 30, since we see nothing in the charge amounting to plain error affecting substantial rights. Fed.R.Crim.P. 52(b).

We also note that the court instructed the jury that "mere presence in the vicinity of a narcotic drug, or mere knowledge of its physical location, in and of itself, of course does not constitute possession," and that they should consider the instructions "as a whole" without accentuating any isolated word or phrase.

## IV

■ Finally, appellant contends that he was prejudiced when the Government did not introduce evidence that the affidavit supporting the search warrant described a narcotics sale in appellant's apartment by a person clearly not the appellant.

However, all this evidence was available to defendant at trial and he made no point of the matter. He could have offered the search warrant affidavit in evidence but it would have shown that purchases were made by the informant in the apartment *on several occasions;* and thus have weakened his claim of in-

---

4. The instruction stated:

[W]hen you go to bed at night, some of you undoubtedly, most of you take your wrist watch off, your ring, your necklace, or something like that, eyeglasses, put them on the bureau, go to sleep. If a thief comes in during the night and steals your watch that you have just left on the bureau before you went to sleep, or your eyeglasses, or your ring, or something like that, see even though you didn't have it actually in your possession or on you while you're in bed you had constructive possession of it; that was your watch even though it was on the bureau you didn't have actual control over it, like you would if the ring were on your finger. (Tr. 190–191)

nocence.[5] So, he defended on other grounds. In these circumstances we find no basis for permitting appellant to make a belated claim of error arising out of circumstances that he had full opportunity to avoid. We also note that had the Government attempted to introduce such evidence, it would have been subject to objection as an attempt to introduce other offenses into the trial. In such circumstances, since the defense knew of the evidence and was not precluded from offering it, we find no error.

Affirmed.

5. The testimony of appellant claimed essentially, by way of defense, that he knew nothing of the activity of Preston, that he (Palmer) was a college student without any connection to illegal narcotics. Thus, information (as contained in the affidavit for the search warrant) that narcotic traffic was frequent or commonplace in his apartment would have undercut his claim that he was ignorant of such narcotic activity.