**UNITED STATES of America,
Appellee,**

v.

**Randall James RACE,
Defendant-Appellant.**

**No. 75–1169.**

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1976.

Decided Jan. 30, 1976.

---

Airport with a dog trained to detect the presence of controlled substances. The warehouse contained air cargo, domestic and international. The dog reacted to two large wooden crates by biting, scratching and barking—a reaction that Murphy later testified was a "strong alert" to drugs. Documents accompanying the crates revealed that they had been sent from Phoenix, Arizona, to a "Professor James Race" and that they weighed 270 pounds. After conferring with airline employees, Murphy began to open the crates, and had removed two outer boards when an employee notified him that the consignee was at the warehouse to pick up the crates. At this point he stuck a knife into one of the crates, through a crack between two of its plywood sides, and detected the smell of marijuana on the blade. He then called the Drug Enforcement Administration office for assistance.

When DEA agents arrived, Murphy described the situation and demonstrated the dog's reaction to the crates. The agents then concealed themselves while the defendant, who had been stalled since his arrival at the warehouse by airline employees, claimed the crates and had them loaded into his waiting automobile. After he had adjusted them in the back of the car, a station wagon and had gotten into the driver's seat, agents moved in and arrested him.

Maurice Ford, Dorchester, Mass., for appellant.

Lawrence P. Cohen, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Defendant Randall James Race was convicted in the district court of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

On February 4, 1974, customs agent Michael Murphy was inspecting the American Airlines warehouse at Logan

The agents identified themselves as federal agents, asked the defendant to get out, walked him around to the back of the car, and requested permission to search the crates. When the defendant gave no response to the question, one of the agents stated that he was under arrest and another proceeded to read him his Miranda rights (which Race thereafter said he understood) from a DEA form. An agent then suggested that the defendant might confer with a prosecutor on whether he should consent to a search of the crates, and the defendant requested such a conference. The agents accordingly brought the defendant to the office of an Assistant United States Attorney, Jay Whittier, in the

federal courthouse building. There a lengthy conversation ensued between the defendant, the agents and the prosecutor concerning the defendant's rights and the sufficiency of the evidence to support a search warrant. At the end of this conversation, which lasted a little more than an hour, the defendant wrote out and signed a statement authorizing a search of the crates.

After an extended hearing, the district court denied the defendant's motion to suppress the marijuana found in the crates, ruling that the arrest was lawful and that the subsequent search of the crates was voluntarily consented to by the defendant. After a jury trial, defendant was convicted, and this appeal followed.

Defendant here challenges the decision to admit the marijuana into evidence on three grounds: (1) that the arrest was unsupported by probable cause; (2) that his consent to the subsequent search was not voluntary; and (3) that even if he consented to a search after his arrest, the search was unlawful because tainted by the pre-arrest conduct of customs agent Murphy in inserting the blade of his knife into one of the crates. We sustain the determination of the district court that the arrest and search were valid and affirm the conviction.[1]

█ First, we believe there was probable cause to arrest the defendant at the airport. The dog's strong alert to the two crates, when turned loose in a warehouse containing some 300 crates, was enough to give agent Murphy, who had worked with the dog since 1971, reason to believe the crates held contraband.[2] We do not, of course, suggest that any dog's excited behavior could, by itself, be adequate proof that a controlled substance was present, but here the Government laid a strong foundation of canine reliability and handler expertise. Murphy testified that the dog had undergone intensive training in detecting drugs in 1971, that he had had at least four hours a week of follow-up training since then, as well as work experience, and that the strong reaction he had had to the crates was one that in the past had invariably indicated the presence of marijuana, hashish, heroin or cocaine. The DEA agents were entitled to rely on Murphy's experience and special expertise in judging the dog's reaction and they were aware that the crates had been sent from a border state, Arizona, and that they weighed 270 pounds, facts that were consistent with the dog's reaction. In addition, the agents knew that the defendant had represented himself to airline employees as the consignee, and witnessed him help employees put the crates in the back of his car and prepare to drive away. Under the circumstances we think the record contains sufficient evidence to support a finding of probable cause to believe not only that the crates contained a controlled substance, but also that the defendant was knowingly in possession of such substances. See *United States v. Phillips*, 496 F.2d 1395 (5th Cir. 1974); *United States v. Bonham*, 477 F.2d 1137 (3d Cir. 1973); *United States v. Palmer*, 151 U.S.App. D.C. 317, 467 F.2d 371 (1972); *People v. Reisman*, 29 N.Y.2d 278, 327 N.Y.S.2d 342, 277 N.E.2d 396 (1971); *People v. Nettles*, 23 Ill.2d 306, 178 N.E.2d 361 (1961), *cert. denied*, 369 U.S. 853, 82 S.Ct. 939, 8 L.Ed.2d 12 (1962).

█ Turning to the subsequent search, we find ample support for the district court's finding of voluntary consent. We have said,

---

1. As we find the court to have properly admitted the marijuana into evidence, we see no merit to defendant's claim that the district court should have entered a judgment of acquittal.

2. The second circuit and the District of Columbia circuit have both held that the sniffing of bags by trained dogs in the baggage area of a public travel terminal is not a search within the fourth amendment. *United States v. Bronstein*, 521 F.2d 459 (2d Cir. 1975); *United States v. Fulero*, 162 U.S.App.D.C. 206, 498 F.2d 748 (1974). We can discern no fourth amendment issue in the use of a dog for a routine check of comingled international and domestic freight in an airport warehouse.

"Whether a search is justified by voluntary consent 'is a question of fact to be determined from all the circumstances,' and the district court's findings will not be overturned unless 'clearly erroneous.'"

*United States v. Cepulonis*, 530 F.2d 238, at 243 (1st Cir., 1976), *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Bradley*, 455 F.2d 1181, 1185 (1st Cir. 1972), *aff'd on other grounds*, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1975). Here the testimony of the prosecutor and one of the agents was that the defendant was relaxed, articulate and responsive throughout the meeting at the Assistant United States Attorney's office; that the length of the meeting was largely the result of the defendant's own questioning and equivocation; that the defendant was repeatedly advised of his right not to consent to a search; that he was not improperly pressured into cooperating; and that as he wrote out his consent statement,[3] he orally expressed full understanding of it. We thus sustain the finding of voluntariness.

Finally, we hold that the consent search was not tainted by the previous inspection of the crates by customs agent Murphy. Even assuming that Murphy violated the fourth amendment by inserting his knife into one of the crates, a question we do not decide, we do not think exclusion of the marijuana in the crates would be warranted. The question is whether the evidence consisting of marijuana found within the crates should be excluded as "fruit of the poisonous tree." The test, as stated in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), is

"'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)."

*Id.* at 488, 83 S.Ct. at 417.

Here, the agents' conduct culminating in the full search of the crates was not an "exploitation" of Murphy's inspection. The prior alert by the specially trained dog to the two heavy crates from a border state provided sufficient cause to arrest the defendant and ample motive to request his consent to search. That consent, once obtained, provided a means of coming at the evidence that was, in our view, "sufficiently distinguishable to be purged of the primary taint."

We have considered defendant's other contentions and find them without merit.

*Affirmed.*

---

3. The statement reads, in pertinent part, as follows:

"I Randall Race having been informed of my constitutional right not to have a search made of 2 crates, described as follows . . . without a search warrant and of my right to refuse to consent to such a search hereby authorize . . . a complete search of the above described crates . . . .."