UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward Devoe GILLESPIE,
Defendant-Appellant.

No. 80–2124.

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1981.

Decided June 5, 1981.
Rehearing Denied August 14, 1981.

Charles H. Graddick, Gary, Ind., for defendant-appellant.

David T. Ready, U. S. Atty., South Bend, Ind., Charles B. Miller, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before SWYGERT and SPRECHER, Circuit Judges, and HOFFMAN, Senior District Judge.*

PER CURIAM.

Defendant Edward Gillespie appeals his conviction on one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He contends that certain items of physical evidence introduced against him at trial were unconstitutionally seized. After oral argument in this case, the Supreme Court issued a decision in *Steagald v. United States*, — U.S. —, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), which held that possession of an arrest warrant for a third party does not justify a search of one's home. In light of that decision, we reverse defendant's conviction.

The facts of the two cases are virtually identical. In each case, federal officers [1] arrived at the defendant's home armed with arrest warrants for fugitives whom the officers had good cause to believe were hiding there. An initial search was undertaken of the house, in which the fugitives were not discovered but contraband [2] was seen by the officers. In each case, two further searches were undertaken, during which more contraband was found and seized. Both defendants filed motions to suppress the seized evidence. The district court in this case carefully sifted through the evidence against Gillespie, and, in a thorough opinion, suppressed much of the testimonial evidence but admitted the physical evidence now in question.[3] After a two-day trial, the jury convicted Gillespie of possession of heroin with intent to distribute. Gillespie was sentenced to ten years' imprisonment.

The Supreme Court in *Steagald, supra*, held that an arrest warrant for a third party did not justify entry into a home of persons not named in the warrant. The Court noted that the purpose of a warrant is to subject to detached judicial scrutiny the conflicting interests of the police and of the party to be arrested or whose home is to be searched. The issuance of an arrest warrant in that case was based upon probable cause to believe that the named fugitive had committed a felony. The reasonableness of entry into Steagald's home, however, was never subjected to judicial scrutiny. "Thus, while the warrant in this case may have protected [the fugitive] from an unreasonable seizure, it did absolutely nothing to protect [Steagald's] privacy interest in being free from an unreasonable search of his home." *Id.* at —, 101 S.Ct. at 1649. The decision to enter Steagald's home was only that of the federal officers involved, and such judicially untested decisions are not reliable enough to satisfy the Fourth Amendment. Because two distinct interests were involved—that of Steagald and that of the fugitive—and because the arrest warrant protected only the fugitive's, "the search of [Steagald's] home was no more reasonable from [Steagald's] perspective than it would have been if conducted in the absence of any warrant." *Id.*

■ The entry into Gillespie's home was similarly illegal "absent consent or exigent circumstances." *Id.* The Government does not argue any exigent circumstances but does contend that Gillespie agreed to the search. The circumstances surrounding the officers' entry into the Gillespie home indicate that any consent could not have been freely and voluntarily given.[4] Five FBI agents and Gary police officers arrived at Gillespie's door armed with shotguns and revolvers, while three or four other officers

---

* The Honorable Walter E. Hoffman, United States Senior District Judge for the Eastern District of Virginia, sitting by designation.

1. The officers in *Steagald* were agents of the Drug Enforcement Administration. Here they were FBI agents accompanied by Gary, Indiana police officers.

2. In *Steagald* the contraband was cocaine. In this case it was heroin.

3. The district court, of course, did not have the benefit of the *Steagald* opinion. While other circuits had split on the issue of applicability of arrest warrants in searches, this circuit had not considered the question. *See Steagald, supra*, at n. 3.

4. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968).

maintained a visible position outside to catch any fugitives who might attempt to flee the house. When Gillespie answered the door, the officers identified themselves and told him they were looking for three fugitives who they had been informed were hiding in his home. It is unclear from the record whether the lead FBI agent was already inside the door when Gillespie said the officers could look for the fugitives, but even if the agent were outside, Gillespie could only have felt he had no choice but to let in the officers. As noted, they were heavily armed, and they carried their weapons in a "ready" position. They frisked Gillespie as soon as they entered the house, and they then forced him to walk in front of them, with their shotguns cocked, as they searched through the house, room by room.[5] No "essentially free and unrestrained choice" is possible under such circumstances.[6]

■ Some physical evidence was taken during this first search, but most of the heroin that was introduced against Gillespie was seized during the second and third searches of his home. Gillespie freely consented to these later searches, but the heroin recovered during them must nevertheless be suppressed. That evidence was entirely the product of the first unconstitutional search. "The exclusionary prohibition extends as well to the indirect as the direct products of [illegal] invasions." *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). If the officers had not been inside the house illegally, they would never have known that Gillespie had any heroin there. If knowledge of a criminal violation is gained from a source independent of illegal police conduct, it may be utilized as any other fact. *See Silverthorne Lumber Co. v. United States*,

251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). In this case, however, all the officers' knowledge of Gillespie's illegal activities was derived from their initial unconstitutional search. Therefore, none of the physical evidence against Gillespie discovered on the day of the search may be introduced against him.

■ The testimonial evidence obtained in Gillespie's confession the same day is just as tainted as the physical evidence. "[T]he exclusionary sanction applies to any 'fruits' of a constitutional violation—whether such evidence be tangible ... or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews*, 445 U.S. 463, 470, 100 S.Ct. 1244, 1249, 63 L.Ed.2d 537 (1980). Because the probable cause for Gillespie's arrest, during which he made the confession, resulted directly from the evidence seized during the illegal search, his detention was also illegal. The Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 603–604, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975), defined the factors to be considered "in determining whether the confession is obtained by exploitation of an illegal arrest [: t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, ... and, particularly, the purpose and flagrancy of the official misconduct." *See also Dunaway v. New York*, 442 U.S. 200, 218, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979). While the illegal arrest was not purposeful here as it was in *Brown* and in *Dunaway*,[7] the other circumstances in those cases are similar to the present case. As the district court found in this case, there was not much time between his arrest and his interrogation at the police station.[8] More importantly, no intervening events of any significance occurred. While

---

5. The question of consent was not explicitly raised in the *Steagald* decision, but the circumstances there were identical. The DEA agents in *Steagald* were also armed with their weapons drawn, and they frisked both men they found outside the house as well as the woman who answered the door.

6. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973).

7. In both *Brown* and *Dunaway*, the police officers involved admitted they made the arrests without probable cause in the hope that the defendant might confess while in custody.

8. He was arrested and taken to the police station between 3:30 and 4:00; his questioning lasted from approximately 4:15 to 6:00.

the atmosphere at the police station may have been calm, as the district court also found, Gillespie was under the direct control of the police from the time of the original illegal search at gunpoint through his confession. As the Supreme Court noted in *Dunaway*, a confession may be voluntary under Fifth Amendment standards but still be inadmissible under the Fourth Amendment when the arrest is illegal.[9] Under the circumstances in this case, we hold Gillespie's testimonial evidence to be inadmissible.[10]

Defendant's conviction is reversed.

---

**9.** *Dunaway v. New York*, 442 U.S. 200, 216–219, 99 S.Ct. 2248, 2258–60, 60 L.Ed.2d 824 (1979); *see also Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975). The fact that Gillespie had signed a *Miranda* waiver similarly bears only on the question of voluntariness and does not affect our Fourth Amendment analysis.

**10.** In *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), as in *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), testimonial evidence of a third party was held to be sufficiently independent for the illegal arrest to be admissible. In this case, however, we are concerned with the testimony of the subject of the illegal arrest. *Brown* and *Dunaway* therefore control our decision here.