USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1236 UNITED STATES, Appellee, v. JORGE M. NAVEDO-COLON, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ ____________________ Juan R. Acevedo Cruz for appellant. ____________________ Jose A. Quiles-Espinosa, Senior Litigation Counsel, with whom _______________________ Daniel F. Lopez-Romo, United States Attorney, was on brief for _____________________ appellee. ____________________ June 30, 1993 ____________________ BREYER, Chief Judge. Jorge M. Navedo Col n ____________ appeals from his conviction for unlawfully possessing drugs with intent to distribute them. 21 U.S.C. 841(a)(1). He argues that the district court should not have permitted the government to introduce as evidence about 26 kilograms of cocaine that government agents took from his suitcase at San Juan's airport. He says that the agents' search of his suitcases was warrantless and without his consent. He adds that, in any event, the search was the "fruit" of a "poisonous tree," namely an earlier illegal x-ray of the suitcases. Wong Sun v. United States, 371 U.S. 471, 484-86 ________ _____________ (1963). We find neither argument convincing. The basic facts are the following: 1. On March 20, 1991, a trained drug-sniffing dog alerted customs agents at the San Juan airport to the likely presence of illegal drugs in several suitcases tagged for a flight to New York. 2. The agents put the suitcases through a Department of Agriculture x-ray machine. The x-ray revealed several packages within that appeared as if they could contain cocaine. 3. Using the suitcase's luggage tags (bearing the name "Luis Garcia"), agents found the suitcases' owner, namely the appellant, who was sitting in the New York bound airplane, which had not yet taken off. The agents asked appellant to accompany them off the airplane, and soon after arrested him. -2- 2 4. One of the agents brought appellant to a special customs room, about nine feet by nine feet in size. He handcuffed one of appellant's hands to a chair, and left the door open. He gave appellant Miranda _______ warnings, and then began to question him. 5. Appellant consented to a search of his hand luggage, in which the agent found luggage claim checks that matched the suitcase tags. Appellant also emptied his pockets, which contained identification bearing his real name, thereby revealing that the name of "Luis Garcia" written on the luggage tag was a false name. 6. After some time had passed (perhaps a few minutes, but certainly less than an hour), the agent brought the suitcases into the room, told appellant about "the dog search, the dog alert" and "the x-ray machine," and asked if he could open the suitcases. The appellant (who, according to the agent, simply said "yes") "shrugged by lifting his shoulders as if admitting defeat," which action, the district court found, amounted to "consent." The agent opened the suitcases and found the cocaine. Appellant does not now deny that he consented to the suitcase search; rather, he says that the government "coerced" this consent. The district court, however, found to the contrary, and we must affirm this finding unless it is clearly erroneous. See, e.g., United States v. Cruz ___ ____ _____________ ____ Jim nez, 894 F.2d 1, 7 (1st Cir. 1990). According to the _______ record, the appellant was simply questioned by one agent for less than an hour, after Miranda warnings, in an _______ approximately eighty square foot room with an open door -- -3- 3 albeit while appellant was sitting with one hand handcuffed to a chair. Despite the handcuff, however, these circumstances fall within the bounds of what courts have deemed valid and "voluntary" consent. See, e.g., United ___ ____ ______ States v. Watson, 423 U.S. 411, 424 (1976) (custody alone ______ ______ does not demonstrate coerced consent to search); United ______ States v. Arango-Correa, 851 F.2d 54, 57-58 (2d Cir. 1988) ______ _____________ (where Miranda warnings given, normal tone-of-voice _______ questioning by several agents over five hours does not demonstrate coerced consent to search, despite strip search). Cf. Shriner v. Wainwright, 715 F.2d 1452, 1455-56 ___ _______ __________ (11th Cir. 1983), cert. denied, 465 U.S. 1051 (1984) (where ____________ Miranda warnings given, handcuffs and ten hours of _______ detention, including five hours of intensive questioning, does not demonstrate that confession was coerced); Stawicki ________ v. Israel, 778 F.2d 380 (7th Cir. 1985), cert. denied, 479 ______ _____________ U.S. 842 (1986) (where Miranda warnings given, 5 1/2 hour _______ detention including 1 1/2 hour interrogation did not render confession coerced). Appellant's second argument -- the "fruit of the poisonous tree" -- presents a somewhat closer question of fact, though not of law. As in the very similar case of United States v. Maldonado-Espinosa, 968 F.2d 101, 103 (1st _____________ __________________ -4- 4 Cir. 1992), cert. denied, 113 S.Ct. 1579 (1993), we will _____________ assume without deciding (as did the district court) that the luggage x-ray was unlawful. If the cocaine proves to be a "fruit" of that x-ray (i.e., if the x-ray caused appellant ____ to consent to the search), then, given the assumption we have indulged, the law requires its suppression. Wong Sun, ________ 371 U.S. at 484-86. We concede that the district court's opinion does not explicitly deny a causal connection between the x-ray __________ and appellant's consent. Yet that opinion does ask whether this consent was the "fruit of a poisonous tree." Furthermore, the opinion found the dog sniffing to be "a lawful act" which provided "an independent legitimate reason" for seeking consent. Lastly, it says that "the government cannot use the x-ray evidence . . . as a basis for obtaining . . . consent," and that the ("unlawful") x- ray "results must be suppressed . . . ." Fairly read, the opinion indicates that the court asked, and answered, the correct causal question in deciding whether to suppress evidence of consent. We also concede that the factual question was a close one. On one hand, the agent's telling appellant about the x-ray suggests that the x-ray might have played a causal -5- 5 role in producing consent. On the other hand, the dog sniff alone provided the agents with sufficient grounds for obtaining a search warrant (had they found it necessary to do so), and for seeking appellant's consent. United States ______________ v. Sokolow, 490 U.S. 1, 5 (1989); United States v. Race, 529 _______ _____________ ____ F.2d 12, 15 (1st Cir. 1976). Given this legal fact, the combined factors apart from the x-ray search -- the agent's description of the dog's reaction, the baggage tags linking appellant to the suitcases, and the discovery of the false name -- might well have convinced appellant that refusing consent was pointless, for the bags would be opened eventually anyway. While the factual question on appeal is close, the legal question is not. Here again, the law directs the district court, not this court, to make factual determinations. How appellant's mind worked at the time -- whether or not the x-ray significantly influenced his decision to consent -- is one such factual determination. In light of the evidence presented to the district court, we cannot find its conclusion to be "clearly erroneous." Fed.R.Civ.P. 52(a) ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the district court to judge the -6- 6 credibility of the witnesses"). We therefore reach the same legal conclusion we reached in Maldonado, which affirmed a _________ district court's determination that an illegal x-ray search did not play a significant role in obtaining appellant's consent to search his luggage. There, as here, agents told appellant about a dog sniff, which by itself could have induced appellant to accede to the search. And, we affirmed a district court's determination that it did so. Maldonado, _________ 968 F.2d at 103-04. Cf. United States v. Race, 529 F.2d 12, ___ _____________ ____ 14-15 (1st Cir. 1976) (consent to search of air cargo found to contain marijuana was not tainted by agent's prior and arguably illegal inspection of cargo, where dog sniff alone provided ample motive to seek consent of cargo's owner). In light of the findings of fact and the legal precedent, the district court judgment is Affirmed. ________ -7- 7