### UNITED STATES of America, Plaintiff–Appellee,

v.

### Lloyd T. LISS, Defendant–Appellant.

### No. 95–3692.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1996.

Decided Jan. 8, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 24, 1997.

---

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Lloyd Liss entered a conditional guilty plea to one count of knowingly and intentionally possessing with the intent to distribute in excess of .100 grams of crystal methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Liss conditioned his plea on his right to appeal the district court's denial of his motion to suppress the methamphetamine, which had been seized from his home under a search warrant. Liss argues that a search of his home pursuant to his written consent, which led to evidence that provided the requisite probable cause for the warrant, was invalid on the ground that the police had sought his consent ·because of evidence obtained during an earlier illegal search of his barn. We affirm.

I

On October 21, 1994, Steve Van Lannen was in police custody after being arrested for committing a drug offense. That evening he agreed to lead the police to a farm where a stolen motorcycle was located. Van Lannen, along with several police officers, drove to Liss's farm in Shawano County, Wisconsin. They arrived at 1:00 a.m. and parked in Liss's driveway. Van Lannen then used a cellular phone to call Liss, and Liss authorized Van Lannen and the police to retrieve the motorcycle.

Several officers and Van Lannen entered the barn on the first floor. They located the stolen motorcycle on the second floor and called a tow truck. After the tow truck had arrived and the motorcycle was being loaded, other officers began searching the first floor of the barn on the assumption that the barn housed an illegal chop shop. During this search, one officer observed a dried marijuana plant hanging from the rafters of the barn on the first floor. A more thorough search of the barn revealed additional marijuana plants hanging from the barn's rafters, marijuana growing in a glass-enclosed structure attached to the barn, a book on silencers, and a vial containing a white powdery substance. While the more extensive search of the barn

Pamela Pepper (argued), Office of U.S. Atty., Milwaukee, WI, for U.S.

Dennis P. Coffey, Michael J. Fitzgerald (argued), Coffey, Coffey & Geraghty, Milwaukee, WI, for Lloyd T. Liss.

was occurring, one officer searched an out-building located near the barn, where he found an item that looked like a still, as well as more marijuana.

The search of the barn and its environs continued until approximately 5:00 a.m., when a police sergeant arrived and queried whether the officers had received consent to conduct the search. The officers responded that they had oral consent to search the barn, and the sergeant recommended that they obtain written consent.

Two officers knocked on Liss's door for several minutes before he answered. They asked him whether he had consented to a search for the motorcycle, and Liss responded that he had. The officers told Liss they had found marijuana in the barn and requested that he provide written consent to search the property. Liss stated that if the police found anything illegal on the farm it must be Van Lannen's. The officers explained that Liss did not have to provide consent. They then read him the consent form. Liss objected to a portion of the form that provided the officers could seize "anything they want." The officers substituted the words "anything illegal," and Liss then signed the consent form.

The officers asked Liss if he wanted to accompany them on their search, and he responded "Yes." The officers began searching the house, and they found more marijuana, vials of white powder, and what appeared to be illegal firearms. Liss then stated he did not like how he felt, and the officers stated they would stop searching. The officers contacted a district attorney who told them to arrest Liss. The officers subsequently sought a search warrant to search the remainder of Liss's property.

The affidavit in support of the search warrant discussed the marijuana found in the barn, as well as weapons found in the barn, the outbuilding, and certain vehicles. The affidavit also included reference to the marijuana and a white powdery substance that were found in Liss's house following his consent to search. The search warrant was issued, and the evidence underlying the indictment was seized.

The federal grand jury returned a seven-count indictment against Liss. The first count charged Liss with knowingly and intentionally possessing with the intent to distribute in excess of 100 grams of crystal methamphetamine. Counts two through six charged Liss with possession of unregistered short-barreled firearms. Count seven charged Liss with possession of a home-made silencer.

Liss filed a motion to suppress all of the evidence seized from his farm. Liss argued that the police exceeded the scope of his consent to search for the motorcycle when, after the motorcycle was located on the second floor, the police continued to search the first floor. Liss argued that the search pursuant to his written consent was invalid because it was tainted by the prior search. Finally, Liss argued that the search pursuant to the search warrant was invalid because it was based entirely on evidence found in the two previous searches. The government acknowledged that there was "some problem" with the majority of the evidence discovered in the barn search. The government responded that only evidence seized pursuant to Liss's written consent or the search warrant would be used at trial.

The district court referred the motion to suppress to a magistrate judge for a report and recommendation. The district court concurred with the magistrate's recommendation to deny the motion to suppress. The court determined that the officers were lawfully present on the first floor of the barn when they found the first marijuana plant and that the plant was in plain view. The court found that the other evidence discovered in the barn and the outbuilding was the result of searches outside the scope of Liss's consent and should be suppressed.

The district court went on to find that Liss's written consent was not tainted by the prior illegal search. Initially, the district court found that Liss's written consent was voluntary. The court also found that the officers did not exploit their illegal search in deciding to request Liss's consent to search his house. Although the officers did not testify as to whether they would have sought consent absent the illegal search of the barn, the district court found it likely that they

would have sought either consent or a search warrant because their suspicions had been aroused by the presence of the stolen motorcycle, the fact that the officers knew Van Lannen had just been arrested on a drug offense, and the legal discovery of one marijuana plant in the barn. Although not mentioned in its opinion because the district court concluded that the search pursuant to the written consent was valid, the district court must have concluded that the search warrant, which had been premised in large part upon the written-consent search, was also valid.

Liss subsequently entered a plea of guilty to count one of the indictment that had charged him with knowingly and intentionally possessing with the intent to distribute in excess of 100 grams of crystal methamphetamine, conditioned on his right to appeal the denial of his motion to suppress. The remaining counts of the indictment were dismissed, and the district court sentenced him to thirty-nine months of incarceration, a $2500 fine, and five years of supervised release. Liss now appeals the district court's decision to deny his motion to suppress.

## II

■ In reviewing a district court's ruling on a motion to suppress, we review questions of law de novo. United States v. Trevino, 60 F.3d 333, 336 (7th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 739, 133 L.Ed.2d 689 (1996). We review factual findings for clear error, and a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir.1994).

Liss argues that the evidence seized under the search warrant should be suppressed as "fruit of the poisonous tree." Specifically, Liss argues that the search which led to the discovery of all of the contraband in the barn, including the single marijuana plant determined legally discovered by the district court, was outside the scope of his consent to search for the stolen motorcycle. Therefore, all of that evidence must be suppressed as

fruit of an illegal search. If the officers had not found that evidence, Liss argues, they would not have requested his consent to search his house. In his words, "there exists no independent justification in the record for the seeking of [Liss's] consent" except for the results of the prior illegal search. As a result, he argues that the evidence discovered during the search pursuant to his written consent and the latter search pursuant to the warrant must be suppressed. We disagree.

We need not decide whether the police exceeded the scope of Liss's consent when they found the marijuana plant on the first floor of the barn because we find that Liss's subsequent consent to search his home purged the evidence seized under the warrant of any taint from the illegal search of the barn. Thus, for the purpose of this opinion, we will assume that all of the evidence found in the barn and its environs was obtained pursuant to an unlawful search.

■ The fact that the police were likely motivated to request Liss's consent to search his home, at least in part, by their discovery of the marijuana in the barn does not necessarily lead to the conclusion that the evidence obtained during the written-consent search must be suppressed. Initially, we note that the Supreme Court has rejected a "but for" test of suppression. See Wong Sun v. United States, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Thus, evidence that would not have come to light but for a previous unlawful search need not necessarily be suppressed. Instead, the Court has directed us to consider "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 488, 83 S.Ct. at 417. The exclusionary rule does not require the exclusion of evidence "when the causal connection between [the] illegal police conduct and the procurement of [the] evidence is 'so attenuated as to dissipate the taint' of the illegal action." United States v. Fazio, 914 F.2d 950, 957 (7th Cir.1990) (quoting Segura v. United States, 468 U.S. 796, 805, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984)).

Liss does not challenge the district court's finding that his consent was voluntary, nor does he argue the related point that by mentioning the marijuana discovered during the search of the barn the police coerced his consent to search the house. Thus, the only question is whether the fact that the police were motivated to request consent to search his house because of what they found illegally in his barn renders the written consent invalid as an exploitation of the illegal barn search.

■ We believe that an officer's motivation when seeking a search consent from someone not in custody is irrelevant. Indeed, the Supreme Court has held that the police may request consent to search an individual's property with absolutely no ground for believing that the person had committed any wrongdoing. *See Florida v. Bostick,* 501 U.S. 429, 434–35, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). The fact that an officer had actual suspicion, however obtained, cannot render invalid a consent for which the officer did not need any suspicion at all to request.

The police could, of course, exploit illegally-obtained knowledge to coerce an individual into providing consent for another search. Such a danger would seem to loom larger where the illegal search and subsequent consent search were of the same location. *See, e.g. United States v. Gillespie,* 650 F.2d 127, 129 (7th Cir.1981) (per curiam) (holding that evidence initially discovered during illegal search of defendant's home must be suppressed when seized during later search to which defendant consented). In that instance, the defendant's consent could be influenced by the belief that there is no reason to withhold consent because the officers had already searched the location. In this case, there is no dispute regarding the voluntariness of Liss's written consent, and, unlike in *Gillespie,* the illegal search was of a different location than the subsequent written-consent search.

Even if the motivation of the officers in requesting consent to search the house were relevant, the fact that their motivation was likely supplied, in part, by a prior illegal search of the barn does not taint the latter consent. As Judge Friendly wrote: "[T]o grant life-long immunity from investigation and prosecution simply because a violation of the Fourth Amendment first indicated to the police that a man was not the law-abiding citizen he purported to be would stretch the exclusionary rule beyond tolerable bounds." *United States v. Friedland,* 441 F.2d 855, 861 (2d Cir.1971); *see also United States v. Watson,* 950 F.2d 505, 508 (8th Cir.1991) ("[W]here a law enforcement officer merely recommends investigation of a particular individual based on suspicions arising serendipitously from an illegal search, the causal connection is sufficiently attenuated...."); *Hoonsilapa v. INS,* 575 F.2d 735, 738 (9th Cir.1978) ("[T]he mere fact that [a] Fourth Amendment illegality directs attention to a particular suspect does not require exclusion of evidence subsequently unearthed from independent sources.").

■ Any application of the exclusionary rule necessarily requires consideration of society's competing interests in deterring illegal police conduct and providing juries with all of the evidence relevant to a defendant's guilt. *United States v. Markling,* 7 F.3d 1309, 1315 (7th Cir.1993). The Supreme Court has determined that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988) (quoting *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984)) (emphasis in *Nix*). If we suppress the house evidence in this case just because the illegal barn evidence may have motivated the decision to seek consent to search the house, the officers here would be put in a worse position. Their prior misconduct would, in effect, have nullified their authority to seek, regardless of reason, the consent of anyone not in custody. In other words, the officers' motivation for seeking a search consent would now be relevant—and only because of their prior misconduct. We think instead that a non-custodial

voluntary consent should be seen as an independent intervening event behind which we will not probe for improper motivation and which thus serves as a break in any causal chain stemming from an illegal search.

The fact that police may request consent without any basis for suspecting wrongdoing distinguishes a consent search from a search premised upon a search warrant. In the latter case, the police must come forward with probable cause to justify the issuance of a warrant. In order to ensure that a warrant subsequent to an illegal search is valid, the Supreme Court has required that the government show that the illegally obtained evidence did not prompt the police officer to seek the warrant or affect the magistrate's decision to issue the warrant. *Murray,* 487 U.S. at 542, 108 S.Ct. at 2536. Our determination that the written-consent search was not tainted by the prior illegal search of the barn leads to the conclusion that the search warrant was not tainted by the prior illegal search. Looking to the two-part test in *Murray,* the drugs and weapons found in Liss's home were independently sufficient evidence to support the officers' decision to seek a warrant and the judge's decision to issue it. Thus, the warrant was valid, and the district court did not err in denying the motion to suppress.

For the foregoing reasons, we AFFIRM.

RIPPLE, Circuit Judge, concurring.

I agree that the judgment of the district court must be affirmed. I am puzzled, however, by the route the court takes to reach this result. In my view, the district court's judgment should be affirmed on the ground that marijuana plants were seen in plain view by an officer who was legally present in the barn at the time. Indeed, the magistrate judge specifically found that at least one plant "was in open view in an area of the barn in which the officers were lawfully present." Magistrate Judge's Recommendation at 13. The district court accepted this finding and found further that the officers would

have sought Mr. Liss' consent or a search warrant even if the marijuana in plain view had been the only incriminating evidence discovered. Based on my review of the record, I am satisfied that these factual findings are not clearly erroneous. As a result, I agree with the district court that the illegal search in this case did not taint the subsequent consent search, or the evidence derived therefrom, because the illegally-obtained evidence was not the impetus for seeking consent. The evidence need not be suppressed because it would have been discovered absent any illegality. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Additionally, the illegally-seized evidence was not used as a device to coerce Mr. Liss' consent.

Because this case can be resolved on the basis of fundamental legal principles, I do not understand why the majority decides instead to mount a frontal assault on the precedents of the Supreme Court of the United States and this court. The majority holds that "Liss's subsequent [voluntary] consent to search his home purged the evidence seized under the warrant of any taint from the illegal search of the barn." *Ante,* at 620. A voluntary consent, however, standing alone, does not purge the evidence of the taint of an antecedent illegal search.[1] "[T]he more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417. To determine whether the taint has been purged, we look to "(1) the temporal proximity of the illegal detention [and the defendant's consent]; (2) the presence of intervening factors between the two events; and (3) the circumstances surrounding, and the nature of, the official misconduct." *United States v. Sanchez–Jaramillo,* 637 F.2d 1094, 1099 (7th Cir.) (*citing Brown v. Illi-*

---

**1.** *Cf. United States v. Morgan,* 725 F.2d 56, 58 (7th Cir.1984) ("Our inquiry does not end with a determination that Morgan's consent was voluntary, for if the agents had improperly 'seized' the

defendant, her consent to a search would have been tainted and the evidence should have been suppressed.").

*nois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975)), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980). Without doubt, a voluntary consent is a powerful "intervening factor" that should be weighed in the *Brown* balance, but the Supreme Court has yet to hold that such a consent per se breaks the causal chain.[2] Indeed, *Brown* makes clear that per se rules of this type are unacceptable. 422 U.S. at 603, 95 S.Ct. at 2261.

The only solace one can take from the majority's deviation from accepted judicial methodology is that the court has limited expressly its new rule to those situations in which a voluntary consent follows an illegal *search.* *Ante,* at 620–21. The majority, therefore, does no violence to the strong body of case law that has held, typically after applying *Brown,* that the voluntary consents at issue were tainted by illegal seizures, stops, detentions or arrests.[3] As a result, most of the Supreme Court's mandate in *Brown* is still alive. I say "most" because taint analysis applies whether the antecedent Fourth Amendment violation is an illegal seizure or an illegal search: "In *Wong Sun,* the Court pronounced the principles to be applied where the issue is whether statements *and other evidence* obtained after an illegal arrest *or search* should be excluded." *Brown,* 422 U.S. at 597, 95 S.Ct. at 2259 (emphasis added).[4]

I respectfully decline to concur in the majority's decision to alter controlling precedent. Under the principle of stare decisis, we are bound by our own decisions. "And the Supreme Court has told the lower federal

**2.** The Tenth Circuit experimented with the majority's rule in *United States v. Carson,* 793 F.2d 1141 (10th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986), "voluntary consent, as defined for Fourth Amendment purposes, is an intervening act free of police exploitation of the primary illegality and is sufficiently distinguishable from the primary illegality to purge the evidence of the primary taint." *Id.* at 1147–48. The Tenth Circuit subsequently abandoned the *Carson* rule. In *United States v. Melendez–Garcia,* 28 F.3d 1046 (10th Cir.1994), the Tenth Circuit, rejecting *Carson,* decided that "not only must the government show that consent is voluntary in fact, but it must also demonstrate a break in the causal connection between the illegality and the consent, so that the court will be satisfied that the consent was 'sufficiently an act of free will to purge the primary taint.'" *Id.* at 1054 (quoting *Wong Sun,* 371 U.S. at 486, 83 S.Ct. at 416–17); *see also* 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 8.2(d) (3d ed. 1996) ("[E]vidence obtained by the purported consent should be held admissible only if it is determined that the consent was both voluntary and not an exploitation of the prior illegality.... [T]he fruit of the poisonous tree doctrine also extends to invalidate consents which are voluntary.").

**3.** *See Florida v. Royer,* 460 U.S. 491, 507–08, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (plurality opinion) ("Because ... Royer was being illegally detained when he consented ..., we agree that the consent was tainted by the illegality and was ineffective to justify the search."); *United States v. Novak,* 870 F.2d 1345, 1353 (7th Cir. 1989); *United States v. Babwah,* 972 F.2d 30, 34 (2d Cir.1992); *United States v. Ceballos,* 812 F.2d 42, 49–50 (2d Cir.1987); *United States v.*

*McCraw,* 920 F.2d 224, 230 (4th Cir.1990); *United States v. Gooding,* 695 F.2d 78, 84 (4th Cir. 1982); *United States v. Chavez–Villarreal,* 3 F.3d 124, 127–28 (5th Cir.1993); *United States v. Cherry,* 759 F.2d 1196, 1211–12 (5th Cir.1985) (remand); *United States v. Grant,* 920 F.2d 376, 388 (6th Cir.1990); *United States v. Ramirez,* 91 F.3d 1297, 1302–04 (9th Cir.1996); *United States v. Suarez,* 902 F.2d 1466, 1468 (9th Cir.1990); *United States v. Delgadillo–Velasquez,* 856 F.2d 1292, 1299–1300 (9th Cir.1988); *United States v. Howard,* 828 F.2d 552, 556 (9th Cir.1987); *United States v. Melendez–Garcia,* 28 F.3d 1046, 1053–56 (10th Cir.1994) (remand); *United States v. Guillen–Cazares,* 989 F.2d 380, 382, 384 (10th Cir.1993); *United States v. Valdez,* 931 F.2d 1448, 1452 (11th Cir.1991); *United States v. Timberlake,* 896 F.2d 592, 595, 596 n. 2 (D.C.Cir. 1990).

**4.** *See also United States v. Gillespie,* 650 F.2d 127, 129 (7th Cir.1981) (suppressing heroin discovered during consent searches that were conducted subsequent to an illegal search), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *United States v. Navedo–Colon,* 996 F.2d 1337, 1339 (1st Cir.1993) (Breyer, J.) (finding an independent, lawful reason for the police's seeking consent); *United States v. Tortorello,* 533 F.2d 809, 815 (2d Cir.) (procurement of voluntary consent based on illegal search may taint consent), *cert. denied,* 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976); *United States v. Calhoun,* 49 F.3d 231, 234 (6th Cir.1995) ("Calhoun's consent, like the search warrants in *Murray* and *Segura,* was not obtained on the basis of any information garnered during the illegal search."); *United States v. Ramirez,* 91 F.3d 1297, 1303 (9th Cir.1996) ("If an unlawful search ultimately leads to the seizure of tangible materials, they, too, will be suppressed if their connection is close enough.").

courts, in increasingly emphatic ... terms, not to anticipate an overruling of a decision by the Court; we are to leave the overruling to the Court itself." *Khan v. State Oil Co.,* 93 F.3d 1358, 1363 (7th Cir.1996). This case could have been decided under Brown and its progeny. Because it was not, I concur in the judgment of the majority.