**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert F. KEITH, Defendant–
Appellant.**

No. 01–2947.

United States Court of Appeals,
Seventh Circuit.

Submitted March 11, 2003.

Decided March 13, 2003.

Before EASTERBROOK, ROVNER,
and EVANS, Circuit Judges.

ORDER

Having failed in his motion to suppress crucial evidence, Robert Keith pleaded guilty to possession of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1). He was sentenced to 84

months' imprisonment and fined $100,000. Keith appeals his conviction and sentence, but his appointed attorney has moved to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), claiming that he is unable to identify a nonfrivolous issue for appeal. Keith responded to counsel's motion, *see* Circuit Rule 51(b), and we confine our review of the record to the potential issues identified in counsel's facially adequate brief and Keith's response. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir.1997) (per curiam).

Counsel first asserts that any argument challenging Keith's conviction – including any argument that the court incorrectly denied Keith's motion to suppress – would be frivolous because Keith entered into an unconditional, knowing, and voluntary plea of guilty, pursuant to a plea agreement, and the district judge fully complied with Federal Rule of Criminal Procedure 11 when accepting Keith's plea. Having reviewed the transcript of the plea colloquy, we agree that the district court substantially complied with the requirements of Rule 11, and that Keith's plea was knowing and voluntary.

Keith claims, however, that his plea was not unconditional, and that he reserved, or at least believed that he was reserving, his right to appeal the court's denial of his motion to suppress. He points out that, as part of the negotiations over his plea agreement, the government agreed to remove the paragraph concerning waiver, under which Keith would have waived the right to appeal or otherwise attack his sentence. Keith says, however, that he believed that he was reserving his right to appeal not only his sentence but also any prior adverse decisions that led to his conviction. He quotes the judge's explanation that by pleading guilty without the waiver paragraph, "you [Keith] would still retain any and all rights you would have to the [sic] either file a direct appeal of what happened here or to attempt to collaterally attack it through a petition for habeas corpus." This shows, Keith argues, that the court shared his understanding that the plea agreement reserved all of his appeal rights, including his right to appeal the denial of his motion to suppress.

Rule 11(a)(2) allows a defendant, "[w]ith the approval of the court and the consent of the government, [to] enter a conditional plea of guilty ..., reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." Fed.R.Crim.P. 11(a)(2). Although the rule says that the reservation is to be in writing, we have upheld the validity of a conditional plea without such written reservation when it was sufficiently clear from the sentencing transcript or some other documentary material in the record that the guilty plea was conditional, and that it was entered into with the approval of the court and the assent of the government. *See United States v. Markling*, 7 F.3d 1309, 1313–14 (7th Cir.1993); *United States v. Yasak*, 884 F.2d 996, 999–1000 (7th Cir.1989).

The record in this case is more ambiguous than in *Markling or Yasak*. In each of those cases, although the right to appeal was not reserved in writing, the reservation was made explicitly and unambiguously in the oral proceedings, and specified the particular rulings over which the right to appeal was reserved. We find no such specificity in the transcript of Keith's change-of-plea hearing, and we are therefore reluctant to say that he did in fact reserve the right to appeal the denial of his motion to suppress. However, we need not reach that question, because even if Keith had reserved that right to appeal, we nevertheless believe that any such chal-

lenge to the district court's ruling would be frivolous.

Keith moved to suppress evidence found in his residence and in a garbage can on his property. The police discovered the garbage can during a search of a shed belonging both to Keith and to his son Nick. Nick consented to the search of the shed, but told the police the garbage can belonged exclusively to his father. The police nevertheless lifted a heavy tarp off of the garbage can and removed a blanket stuffed inside. They quickly noticed the smell of anhydrous ammonia, a chemical used in the manufacture of methamphetamine.

The police then asked Nick if they could speak with his father. When Nick went into the nearby trailer to wake up his father, the police followed Nick into the trailer's kitchen, where they saw in plain view on the countertop a bag containing lithium batteries, which are also used to manufacture methamphetamine. The police asked Keith if he knew about the garbage can containing anhydrous ammonia, and Keith replied that he did not. After going outside with the police to look at the garbage can, Keith asked if he was under arrest. The police told him that he was not. They did ask him, however, if there might be other toxic chemicals on his property of which he was unaware. Expressing concern for the safety of his grandchild, Keith consented to a search of his trailer. The police found various items that are used to make methamphetamine, along with a coffee filter containing a white powdery substance and two plastic bags containing a methamphetamine mixture. Keith was then placed under arrest and, having been read his *Miranda* warnings, admitted to manufacturing and using methamphetamine.

■ At the hearing on the motion to suppress, Keith convinced the district court that Nick did not have authority to consent to the search of the garbage can. The court concluded that because the can was not only covered by a heavy tarp but also had a blanket stuffed inside of it, it was a closed container and thus removed from the scope of the general consent to search the shed. The court suppressed the anhydrous ammonia found in the can. Although Keith also argued that the materials found in the search of the trailer were "fruit of the poisonous tree," the court concluded that under the circumstances, and especially given the police's reassurance to Keith that he was not under arrest, Keith's consent to the search of the trailer was voluntary.

We do not believe Keith could reasonably challenge the court's decision not to suppress the methamphetamine discovered in the trailer. We believe the district court correctly concluded that his consent was voluntary, and that it broke the chain between the discovery of the anhydrous ammonia and the discovery of the methamphetamine. *See United States v. Liss,* 103 F.3d 617, 621 (7th Cir.1997) (consent to search not invalidated merely because request for consent had its origin in results of earlier, impermissible search).

■ We next consider whether Keith could raise any nonfrivolous issues concerning his sentence. Counsel and Keith both discuss the court's decision to deny Keith a three-level reduction for acceptance of responsibility. Keith draws particular attention to the government's failure to recommend a reduction as it had agreed to do as part of the plea agreement. But that agreement was conditioned on Keith's not committing any bond violations, and Keith was later found to have both used and distributed methamphetamine while on pre-sentencing release. Therefore, not only was the court justified in denying the acceptance-of-responsibility

reduction, see *United States v. McDonald*, 22 F.3d 139, 141–44 (drug use can justify court's denial of acceptance-of-responsibility level reduction), the government was also justified in opposing the reduction.

Next, Keith raises a potential issue concerning the amount of methamphetamine used to construct his sentence. The court found him responsible for between 50 and 200 grams of methamphetamine, only 5.9 grams of which was included in the charge to which he had pleaded guilty (possession with intent to distribute). The bulk of methamphetamine for which Keith was held responsible involved earlier episodes in which, according to the findings of the probation officer, Keith and his friends manufactured and shared methamphetamine among themselves. Keith insists that his lawyer should have challenged these inclusions. He cites our holding in *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir.1998), that possession of illegal drugs for personal use should not be included in the relevant quantity in sentencing a defendant for possession with intent to distribute.

However, Keith did not merely possess additional drugs for his personal use, as was the case in *Wyss*. Rather, he assisted in an ongoing process of manufacturing and sharing those drugs. Having pleaded guilty to possession of methamphetamine with intent to distribute – that is, to share it, see *United States v. Washington*, 41 F.3d 917, 919 (4th Cir.1994) (sharing drugs with another constitutes "distribution" under 21 U.S.C. § 841(a)(1)) – it was clearly reasonable for the district court to conclude that the earlier manufacture and sharing were part of the same course of conduct, and thus to include the earlier quantities for purposes of sentencing.

Keith also identifies a potential ineffective-assistance claim. He acknowledges that such a claim is generally not appropriate for direct appeal, but argues that in his case the record supports the claim. See *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir.2002). He suggests that his trial counsel's ineffectiveness is shown by his failure to object to the drug quantities, and by his failure to properly explain to Keith the legal definition of "intent to distribute." However, because the record does not indicate what explanation counsel gave to Keith as to the meaning of "intent to distribute," and does not offer any hints as to why counsel might have chosen not to object to the drug-quantity determination, we do not believe that this claim would be appropriately raised on direct appeal.

We therefore GRANT counsel's motion to withdraw and DISMISS the appeal.