In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2478

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LUIS G. DELGADO,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:11-cr-16-JPS-1—**J.P. Stadtmueller**, *Judge*.

ARGUED NOVEMBER 2, 2012—DECIDED NOVEMBER 29, 2012

Before MANION, WILLIAMS, and HAMILTON, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. On December 29, 2010, a Milwaukee police officer responding to a report of gunshots near the 1900 block of South 12th Street saw a Hispanic male running towards a building at 1830 South 13th Street. A witness then told the officer that her cousin had been shot by a black male and that her cousin was hiding in an apartment in that building. After police officers approached the apartment and knocked, Defendant

Luis G. Delgado, who was the Hispanic male seen earlier, and the shooting victim, who had a visible graze wound on his wrist, came out of the apartment. The officers detained Delgado in the squad car and then, without a warrant, entered and searched his apartment finding various firearms. Delgado was indicted for being a felon in possession of a firearm and for possessing an unregistered firearm. Delgado moved to suppress. Both the magistrate judge and the district court agreed that the warrantless search was not justified by exigent circumstances, but the district court found that the search was a valid protective sweep and denied Delgado's motion. Pursuant to the conditional plea agreement, Delgado pled guilty and was sentenced to a year and a day of imprisonment.

Delgado now appeals the denial of his suppression motion. The government concedes that the warrantless search was not a valid protective sweep, but argues that exigent circumstances existed because a reasonable officer could have believed that the unaccounted-for shooter was still hiding in the same apartment from which the shooting victim and Delgado had emerged. However, we agree with the magistrate judge and the district court and reject that argument. Absent any verbal or non-verbal indication from the victim, the witness, or Delgado that anyone else was in the apartment or that the victim or Delgado had been subjected to violence inside the apartment, the mere fact that the shooter was generally at large was not enough for a reasonable officer to believe that the shooter was specifically in the apartment. Therefore, we reverse

the denial of Delgado's suppression motion, vacate the judgment of conviction, and remand with instructions to grant Delgado's suppression motion and for additional proceedings consistent with this decision.

## I. BACKGROUND

On December 29, 2010, Milwaukee police officers responded to a report of gunshots in an alley near the 1900 block of South 12th Street. When they arrived, one officer noticed a Hispanic male (later identified as Delgado) running from the alley towards a building at 1830 South 13th Street clutching his left waistband. While following him, the officer was stopped by a witness who said that her cousin, Adrian Aviles, told her that a black male had shot him in the alley and that Aviles was hiding in Delgado's apartment at 1830A South 13th Street. The officers went to the apartment and knocked on the door. After getting no response, they prepared to force their way into the apartment when Aviles, who had a visible graze wound on his wrist, came out of the apartment with Delgado, who was unarmed. Neither Aviles nor Delgado indicated—in words, demeanor, or otherwise—that the shooter was in the same apartment from which they exited. There was no indication that anyone else was in the apartment or that Aviles or Delgado had been subjected to violence inside the apartment. After recognizing Delgado as the Hispanic male spotted earlier, the officers handcuffed him and placed him in the back of a squad car.

The officers went back to the building, entered Delgado's apartment without a warrant, and searched it. Inside Delgado's bedroom closet, the officers found four antique rifles and two shotguns, including one sawed-off shotgun. During questioning, Delgado said he was the sole occupant of the apartment and had been previously convicted for armed robbery.

Delgado was charged with being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and for possessing an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871. Delgado moved to suppress the firearms, the parties stipulated to the facts, and no evidentiary hearing was held. The magistrate judge recommended granting the motion, finding that no exigent circumstances existed to justify the warrantless search, and that the search was not a valid protective sweep. The government objected to the recommendation but did not ask the district court for permission to supplement the record or for an evidentiary hearing. The district court, relying on the stipulated facts, agreed that no exigent circumstances existed, but denied the motion because it found that the search constituted a protective sweep. Delgado pled guilty pursuant to a conditional plea agreement which permitted him to challenge the denial of the suppression motion on appeal. He was sentenced to one year and a day of imprisonment and has appealed the denial of his suppression motion.

## II. ANALYSIS

Though the government argued before both the magistrate judge and the district court that the warrantless search was justified as a protective sweep, it concedes on appeal that it was not. The government now argues exclusively that the search was justified by exigent circumstances.

"Warrantless searches of areas entitled to Fourth Amendment protection are presumptively unreasonable, but the government may overcome this presumption by demonstrating that, from the perspective of the officer at the scene, a reasonable officer could believe that exigent circumstances existed and that there was no time to obtain a warrant." *United States v. Schmidt*, ___ F.3d ___, 2012 WL 5392623, at *2 (7th Cir. Nov. 6, 2012) (citation omitted). Exigent circumstances exist, for example, when officers must "'protect a [person] from imminent injury.'" *Kentucky v. King*, ___ U.S. ___, 131 S. Ct. 1849, 1856 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "In reviewing the district court's denial of a motion to suppress, we review factual findings for clear error and issues of law de novo, and whether exigent circumstances existed is a mixed question of fact and law that is reviewed de novo." *Schmidt,* 2012 WL 5392623, at *2 (citation omitted). Because the facts here were stipulated, our review in this case is essentially de novo.

The government argues that a reasonable officer could have believed that the shooter chased Aviles into Delgado's apartment and hid there after the officers knocked on the door, while Aviles and Delgado left

the apartment. It suggests that the officers needed to search the apartment to find the shooter, who posed an immediate threat to the officers and others. But the government points to no signs of any further shooting, struggle, or presence of other persons in that apartment that were observed by the officers when they arrived. When Aviles and Delgado came out of the apartment in response to the officers' knocking, neither of them gave any verbal or non-verbal indication to the officers that the dangerous shooter was in the apartment. It is unreasonable to believe that, faced with such life-threatening danger, both the shooting victim and Delgado would leave the apartment with nary a word or any expression whatsoever indicating that the shooter was just over their shoulder or that they were within seconds of being killed. *Cf., e.g.*, *United States v. Arch*, 7 F.3d 1300, 1304-05 (7th Cir. 1993) (defendant's "irrational, agitated, and bizarre" behavior, coupled with other suspicious signs of violence, sufficient to create reasonable belief of exigent circumstances). Furthermore, the witness who approached the officer said nothing about the shooter chasing Aviles into Delgado's apartment. It is also unreasonable to think that Aviles would tell his cousin that he had been shot and was hiding in Delgado's apartment, but fail to mention that the shooter was after him. The mere fact that the shooter was generally at large is not enough for a reasonable officer to specifically believe that he was in the apartment. *Cf. United States v. Ellis*, 499 F.3d 686, 691 (7th Cir. 2007) ("[I]f we affirm the district court's decision in this case, we have effectively created a situation in

which the police have no reason to obtain a warrant when they want to search a home with any type of connections to drugs.").

For the government's theory to be reasonable under these circumstances, one would have to believe that the shooter (lethally armed and bent on killing Aviles), Delgado (potentially lethally armed and bent on protecting Aviles), and Aviles rushed into the sole-occupant apartment and were poised for a fatal showdown, but that the officers happened to knock on Delgado's door at the precise climactic moment before anyone could pull a trigger or throw a punch, causing the parties to immediately suspend all hostilities while the shooter scrambled into a hiding position and Aviles and Delgado left acting as if nothing had happened. The presumption of unconstitutionality that attaches to warrantless searches requires the government to point to *something* that would lead a reasonable officer to think that this improbable scenario actually transpired, but the government simply has not done so.

The government argues that Aviles's and Delgado's silence when they came out of the apartment does not mean that the shooter was not in the apartment, because victims of violence sometimes choose to remain silent to prevent an investigation into their own criminal activity or to prevent their wounded foe from receiving aid. But this argument erroneously suggests that the defendant carries the burden of proving a lack of exigent circumstances, when it is actually incumbent upon the government to point to some *affirmative* sign of exigency.

Silence in this context cannot be that sign, as it could have easily meant any number of things having nothing to do with exigent circumstances. *Cf., e.g., Ellis*, 499 F.3d at 691 (finding no exigent circumstances because general movement noises in response to officer's knocking do not automatically mean that evidence is about to be destroyed, when they could simply signal someone getting up to answer the door). The government notes that in other cases, police officers have validly entered homes without a warrant upon suspicion of domestic violence even when the victim remains silent upon answering the door, but in those cases, silence or an indication that everything was fine was not *in and of itself* an affirmative indication of exigent circumstances. The victim's silence simply failed to vitiate *other* affirmative indications that something dangerous was happening inside the home. *See Hanson v. Dane Cty.*, 608 F.3d 335, 338 (7th Cir. 2010) (abused wife's request for the police to leave did not take away from the fact that she had earlier placed a 911 call and abruptly hung up); *United States v. Jenkins*, 329 F.3d 579, 581-82 (7th Cir. 2003) (man's non-responsiveness irrelevant given 911 call and certain noises from within home). Absent such other affirmative indications here, Aviles's and Delgado's silence adds nothing to the exigent circumstances equation.

The government's failure to carry its burden compels us to find that the officers violated Delgado's Fourth Amendment rights when conducting a warrantless search of his apartment. So we reverse the denial of Delgado's suppression motion, vacate his conviction,

and remand for additional proceedings consistent with this decision. In remanding, we also instruct the district court to grant Delgado's suppression motion. After the magistrate judge found a lack of exigent circumstances based on a set of stipulated facts, the government could have asked the district court to supplement the record and could have requested an evidentiary hearing. *See* 28 U.S.C. § 636(b)(1); *Hynes v. Squillace*, 143 F.3d 653, 656 (7th Cir. 1998); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). It did not. Though the government has not suggested that it is now entitled to an evidentiary hearing at this late stage, our instructions to grant the suppression motion do not include providing an evidentiary hearing. It is too late for that.

## III. CONCLUSION

For the above-stated reasons, we REVERSE the denial of Delgado's suppression motion, VACATE his judgment of conviction, and REMAND with instructions to grant his suppression motion and for additional proceedings consistent with this decision.