In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-1305

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DIMITRIS TERRY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 887-3 — **Ronald A. Guzmán**, *Judge.*

_____

ARGUED OCTOBER 30, 2018 — DECIDED FEBRUARY 14, 2019

_____

Before WOOD, *Chief Judge*, and SYKES and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. Is it reasonable for officers to assume that a woman who answers the door in a bathrobe has authority to consent to a search of a male suspect's residence? We hold that the answer is no. The officers could reasonably assume that the woman had spent the night at the apartment, but that's about as far as a bathrobe could take them. Without

more, it was unreasonable for them to conclude that she and the suspect shared access to or control over the property.

I.

In February 2012, a team of agents from the Drug Enforcement Agency (DEA) executed an arrest warrant for Dimitris Terry related to his role in a conspiracy to possess and distribute heroin. The agents didn't want others to know that Terry had been arrested because they hoped to secure his cooperation in the broader investigation; thus, they planned a quick and quiet arrest. They waited for him to return home from taking his son to school one morning, arrested him when he got out of his car, and took him to the DEA's Chicago field division for questioning.

A few agents remained behind. Two of them knocked on the door of Terry's apartment, and a woman answered, wearing a bathrobe and looking sleepy. The agents identified themselves, explained that they had just arrested Terry, and asked to come inside. They didn't ask the woman who she was, how she was related to Terry, or whether she lived at the apartment.

Without hesitation, the woman let the agents in, and they immediately presented her with a consent-to-search form. After she both read the form and had it read aloud to her, she signed it, and the search began. Only then, after the search was underway, did the agents ask the woman who she was. She identified herself as Ena Carson, the mother of Terry's son. She explained that her son lived at Terry's apartment, but she did not. Nevertheless, the agents continued the search for roughly the next hour. They recovered letters addressed to

Terry showing proof of residence, four cell phones, and a suspected drug ledger.

Meanwhile, two DEA agents conducted a post-arrest interview of Terry back at the field office. Before asking any questions, the agents read Terry his *Miranda* rights, which were also spelled out on an advice-of-rights form. The agents signed the form, but Terry refused to do so. When asked if he understood his rights, Terry explained that "he was not going to sign the form or initial it; that, you know, this wasn't his first go-around with law enforcement … but he was willing to talk." The agents understood Terry's statement to mean that he had prior experience with law enforcement, understood his rights, and was knowingly and voluntarily waiving them by agreeing to talk with the agents. So they wrote "Verbal Only" on the advice-of-rights form, indicating that Terry "gave verbal consent that he understood the form." Terry then answered the agents' questions about the case and made incriminating statements about his role in the conspiracy to distribute heroin.

Terry was charged with possession, distribution, and conspiracy to possess and distribute heroin in violation of 21 U.S.C. §§ 841(a) and 846. He moved to suppress both the evidence recovered from the search and his post-arrest statements to the agents. First, Terry argued that the search was unlawful because Carson had neither actual nor apparent authority to consent to it—all the agents knew at the time of consent was that she answered the door at Terry's apartment wearing a bathrobe. Had the agents simply inquired, Terry said, they would have discovered that Carson did not live at the apartment. Second, Terry claimed that he had not understood that he was waiving his *Miranda* rights when he

answered the agents' questions. Thus, he argued, the waiver was invalid and his post-arrest statements should be suppressed.

After an evidentiary hearing at which the agents and Terry testified, the district court denied both motions. As to the first, the court determined that it was reasonable for the agents to assume that Carson lived at the residence and had authority to consent to the search because (1) she was permitted to be home when Terry was not; (2) her son resided at the apartment; (3) the bathrobe "indicated she was more than a mere temporary guest"; and (4) she consented to the search without hesitation.

On the second motion, the court found Terry's testimony that he did not know that his statements could be used against him "simply not credible" given his many encounters with law enforcement—he has been arrested at least seventeen times since he turned eighteen—as well as his level of education and success in business. The court thought that this was strong evidence that Terry understood his rights. And because he understood his rights, the court concluded that Terry's answers to the agents' questions provided "a clear and unequivocal waiver of his right to remain silent."

After a bench trial, the district court found Terry guilty and sentenced him to 168 months' imprisonment. Terry asks us to vacate his conviction on the ground that the district court erroneously denied his motions to suppress.

## II.

In reviewing a district court's denial of a motion to suppress, we review the district court's legal conclusions de novo and its underlying factual determinations for clear error.

*United States v. Richards*, 741 F.3d 843, 847 (7th Cir. 2014). We give "special deference to the district court's credibility determinations because the resolution of a motion to suppress is almost always a fact-specific inquiry, and it is the district court which heard the testimony and observed the witnesses at the suppression hearing." *United States v. Burnside*, 588 F.3d 511, 517 (7th Cir. 2009).

### A.

As a rule, the Fourth Amendment requires the government to get a warrant before searching someone's property. U.S. CONST. amend. IV; *see also United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). But the warrant requirement is subject to several "carefully defined" exceptions. *See Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971). One is consent from a person with actual or apparent authority to give it. *Basinski*, 226 F.3d at 833–34. When a person allows a third party to exercise authority over his property, he "assume[s] the risk that the third party might permit access to others, including government agents." *Id.* at 834 (citing *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)).

The government does not claim that Carson had actual authority to consent to the search of Terry's apartment. The dispute is about whether she had apparent authority, which exists when "the facts available to the officer at the moment … 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises," even if the person actually had no such authority. *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (alteration in original) (citation omitted). An officer might reasonably believe that a third party has authority over certain property if the third party appears to have "joint access or control for most purposes." *United States v.*

*Ryerson*, 545 F.3d 483, 487 (7th Cir. 2008) (quoting *Matlock*, 415 U.S. at 171 n.7).

To determine whether the officers' belief was reasonable, we consider "what the officers knew *at the time they sought consent*, not facts that came to light after the search began." *United States v. Alexander*, 573 F.3d 465, 474 (7th Cir. 2009) (emphasis added). If the officers did not know enough to reasonably conclude that the third party had authority over the premises, they had "a duty to inquire further" before they could rely on her consent to the search. *United States v. Goins*, 437 F.3d 644, 648 (7th Cir. 2006). As one treatise puts it: "sometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.'" 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.3(g) (5th ed. 2018).

When the search began, the agents had four facts: Terry left Carson alone in the apartment for about forty-five minutes, Carson was wearing a bathrobe, she appeared sleepy, and she consented to the search without hesitation. They did not know who she was, what her relationship to Terry was, why she was in the apartment, how long she had been in the apartment, or whether she lived there. At that point, the agents did not know that Carson was the mother of Terry's child—so it was wrong for the district court to rely on that fact in evaluating Carson's apparent authority. *See Alexander*, 573 F.3d at 474 (explaining that facts that come to light after a search begins cannot support apparent authority to consent).

The facts that the agents had made it reasonable for them to conclude that Carson had spent the night at Terry's apartment. That *might* have been an indication that she lived with

him, but there are multiple other possibilities. She could have been a one-time guest, a periodic guest, a friend or relative visiting for a couple of days—or she may have had some other relationship to Terry. And the existence of so many other equally plausible possibilities should have prompted the agents to "inquire further." *See Goins*, 437 F.3d at 648.

But they did not. Instead, they thought that it was safe to assume that Carson had spent the night in the apartment, therefore lived in the apartment, therefore had joint access to or control over the apartment for most purposes, and therefore had the authority to consent to the search. This kind of inferential pileup falls short of the reasonableness required by the Fourth Amendment. *See Rodriguez*, 497 U.S. at 188–89. A bathrobe alone does not clothe someone with apparent authority over a residence, even at 10:00 in the morning.

Because the government has failed to demonstrate that an exception to the warrant requirement applies, the evidence discovered as a result of the search must be suppressed. *See Basinski*, 226 F.3d at 834.

B.

Terry also argues that the statements that he made in his post-arrest interview should be suppressed because he did not knowingly waive his *Miranda* rights by choosing to speak with the agents. A defendant's "statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived *Miranda* rights' when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (citation and alteration omitted). Knowing waiver requires "a full awareness of both the nature of the right being abandoned and the

consequences of the decision to abandon it." *Id.* (citation omitted). Terry notes that he never explicitly waived his right to remain silent and points to his refusal to sign the advice-of-rights form as evidence that he did not knowingly waive his *Miranda* rights. But this argument is squarely foreclosed by Supreme Court precedent.

In *Berghuis v. Thompkins*, the defendant refused to sign a form acknowledging his *Miranda* rights. He remained largely silent during questioning that lasted about three hours, but he ultimately confessed to the crime. *Id.* at 375–76. The Supreme Court rejected his Fifth Amendment challenge. It explained that a knowing waiver can be express or implied, *id.* at 384, and that "[a]s a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford," *id.* at 385. Consistent with that principle, it concluded that the defendant knowingly waived his rights because (1) his understanding of English was sufficient evidence that he understood the rights that had been presented, *id.* at 385–86, and (2) the fact that he answered the detective's questions was a sufficient "course of conduct indicating waiver," *id.* at 386 (citation omitted).

We agree with the district court that Terry's education, sophistication, and familiarity with the criminal justice system provides sufficient evidence that he understood his rights when the agents read them to him. *See id.* at 385–86; *see also Burnside*, 588 F.3d at 517. And as in *Berghuis*, Terry's willingness to speak with the agents was a "course of conduct indicating waiver," notwithstanding his refusal to sign the advice-of-rights form. 560 U.S. at 386 (citation omitted). Thus,

the district court correctly concluded that Terry knowingly waived his right to remain silent and properly denied his motion to suppress.

\* \* \*

The evidence discovered in Terry's apartment was the fruit of an unconstitutional search, so the district court should have granted his motion to suppress it. But the district court properly denied Terry's motion to suppress his post-arrest statements. We therefore REVERSE in part, VACATE the conviction, and REMAND for proceedings consistent with this opinion.