In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-1001

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRANDON CADE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cr-223-1 — **Sharon Johnson Coleman**, *Judge.*

_____

ARGUED NOVEMBER 30, 2023 — DECIDED FEBRUARY 26, 2024

_____

Before HAMILTON, KIRSCH, and PRYOR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Brandon Cade and a female companion ("T.J.") were standing in the street next to a parked sedan when two Chicago police officers approached. T.J. was drinking from a red solo cup. When the officers asked her what she was drinking, she stated that the drink contained alcohol. The officers also noticed an open bottle of alcohol in the back of the sedan. As a result, the officers executed a search of the car, during which they recovered a firearm. After

the officers read Cade and T.J. their *Miranda* rights, they asked about the firearm. Cade admitted that it belonged to him and that he did not have a proper license to carry the weapon. The officers consequently took Cade into custody. The government charged Cade with one count of possession of a firearm by a felon (18 U.S.C. § 922(g)(1)), after which Cade unsuccessfully sought to suppress evidence of the gun and his incriminating statements. He ultimately pleaded guilty but reserved his right to appeal the suppression ruling, though he now concedes he only has standing to seek suppression of his statements. Because the initial encounter with the officers was consensual, and because Cade's incriminating statements were sufficiently attenuated from any allegedly unlawful seizure, we affirm.

I

On September 6, 2020, at around 8:30 pm, Chicago Police Officers Eric Myers and Bryan Perez Pacheco, each wearing body cameras, were patrolling a neighborhood in their marked car when they drove past Brandon Cade and T.J. standing next to a white sedan. While doing so, they observed Cade carrying a bag over his shoulder. The officers turned their car around and drove back to Cade and T.J.'s location. After pulling over in front of the sedan and turning on their emergency lights, the officers exited their vehicle and approached Cade and T.J.

Cade notably no longer had a bag on his person. T.J. was holding a red solo cup. When Officer Myers asked about the contents of the cup, T.J. admitted that it contained liquor. Officer Pacheco then began leading Cade to the rear of the vehicle. Simultaneously, Officer Myers asked T.J. about the sedan's ownership and requested her identification. T.J.

responded that the sedan belonged to her grandmother. While T.J. searched for her identification, the officers asked Cade about the bag they had previously seen him carrying, but he denied possessing any bag. Officer Myers then noticed an unsealed bottle on the floor of the sedan's back passenger compartment. He asked T.J. if the bottle was Don Julio (a brand of tequila); she responded affirmatively.

Officer Myers directed T.J. to step away from the sedan and move toward the rear alongside Cade. He then opened the driver door, found a large bag on the driver's seat, and noticed a firearm inside of it. At the same time, Officer Pacheco handcuffed Cade and T.J. to one another, leaving both with one arm free. Officer Myers then asked Cade and T.J. if either of them had a license to carry a firearm; each responded that they did not. Officer Myers turned back to the sedan, pulled the firearm out of the bag, and emptied the magazine onto the roof of the car.

While Officer Myers continued inspecting the firearm, Officer Pacheco read Cade and T.J. their *Miranda* rights. After Cade and T.J. acknowledged that they understood their rights, Officer Pacheco asked, "Whose gun is it?" Cade admitted the gun belonged to him. He also admitted he did not have a firearm license. Accordingly, Officer Pacheco placed Cade under arrest.

After the officers transported Cade to a police station, Officer Myers again read Cade his *Miranda* rights. Cade agreed to respond to questioning, and in doing so, confirmed that the firearm found during the stop belonged to him. He added that he had possessed the bag containing the firearm prior to the stop.

The government charged Cade with one count of possession of a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). Cade moved to suppress the gun and the statements he made to police; he also sought an evidentiary hearing. The district court denied Cade's motion, concluding (1) that the officers initially engaged in a consensual encounter with Cade and T.J.; (2) that the officers thereafter had reasonable suspicion to execute an investigatory stop based on violations of city ordinances; (3) that the officers had probable cause to search the sedan and bag based on the unsealed tequila bottle; and (4) that even if they did not, Cade lacked standing to challenge the search of the sedan or bag. The district court also denied Cade's request for an evidentiary hearing after determining that he failed to identify any material factual disputes.

Cade pleaded guilty, reserving his right to appeal the district court's denial of the motion to suppress. The district court sentenced Cade to 65 months' imprisonment. This timely appeal followed.

## II

When a district court denies a motion to suppress, we review findings of fact for clear error and conclusions of law de novo. *United States v. Ruiz*, 785 F.3d 1134, 1140–41 (7th Cir. 2015). Cade has conceded that he lacks standing to challenge the admission of the gun because he had no reasonable expectation of privacy in the sedan or the bag he had abandoned. He now only seeks suppression of the incriminating statements he made after the gun was found.

A

Cade first argues the initial encounter with the officers was an unlawful seizure, and any evidence recovered in the ensuing stop, which includes his statements, must be suppressed. A seizure occurs under the Fourth Amendment if a reasonable person would not feel free to leave, but not every encounter with police officers implicates the Fourth Amendment. *United States v. Holly*, 940 F.3d 995, 1000 (7th Cir. 2019). We have recognized three basic categories of police-citizen encounters:

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe a person has committed or is committing a crime. The second category is an investigatory stop, which is limited to a brief, non-intrusive detention. This is also a Fourth Amendment "seizure," but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment.

*United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015) (quotation omitted). For the third category, often called a "consensual encounter," see *id.*, "the degree of suspicion that is required is zero," *United States v. Pace*, 48 F.4th 741, 748 (7th Cir. 2022) (cleaned up). To be sure, "[t]he Supreme Court has

stated clearly that there is no constitutionally cognizable sei-
zure 'simply because a police officer approaches an individ-
ual and asks a few questions.'" *Id.* (quoting *Florida v. Bostick*,
501 U.S. 429, 434 (1991)).

In determining whether a police encounter was consen-
sual, we consider these factors: (1) the location of the interac-
tion, including whether it was in public; (2) the number of of-
ficers present; (3) the extent to which the police presence was
threatening; (4) whether the officers made a show of weapons
or physical force; (5) the officers' language and tone;
(6) whether the officers implied that the defendant was sus-
pected of a crime; and (7) whether the defendant was in-
formed he was free to leave. *Holly*, 940 F.3d at 1000. Whether
a police-citizen encounter was consensual is a question of fact,
so we review the district court's determination for clear error.
*United States v. Whitaker*, 546 F.3d 902, 906 (7th Cir. 2008).

Applying the above factors, we conclude that the district
court did not clearly err in deeming the initial encounter con-
sensual. Officers Myers and Pacheco first drove past Cade and
T.J. standing in the street alongside a parked sedan. When
they returned to the pair, they pulled their car off to the side
of the road slightly in front of the sedan, turned on their emer-
gency lights, calmly exited their vehicle, and asked T.J. a rea-
sonable question about the contents of her red solo cup. The
interaction took place on a public road with other cars and
people nearby, only two officers were present (matching the
number of suspects), and the officers' conduct was not threat-
ening—they did not rush out of their vehicle or have their
hands on their service firearms. Further, the officers did not
show their weapons, talk to Cade or T.J. in an aggressive tone,
or imply that anyone was suspected of a crime. While the

officers did not inform Cade and T.J. that they could leave, the factors in *Holly* are "neither exhaustive nor exclusive." 940 F.3d at 1000 (quotation omitted).

Cade argues that the officers demonstrated the requisite authority needed for a seizure by activating their emergency lights and positioning their vehicle in front of the sedan. Police officers routinely use emergency lights to signal motorists to stop, but encounters with pedestrians on the street can be different. When police officers park a police vehicle in a public street to approach pedestrians on foot, especially at night, the officers' use of emergency lights on the parked vehicle does not necessarily convert a consensual encounter into a seizure. See *United States v. Clements*, 522 F.3d 790, 794–95 (7th Cir. 2008) ("The officers approached the car to investigate why the car had been parked and running on a public street for four hours, a circumstance unusual enough to at least merit some investigation. The officers illuminated their flashing lights to alert the car's occupants that they were going to approach the vehicle. Without identifying themselves appropriately to the car's occupants, the officers would have put themselves at risk in approaching a parked car late at night."); cf. *Pace*, 48 F.4th at 749 (encounter was consensual until officer established reasonable suspicion and then activated emergency lights, initiating stop). Here, Cade and T.J. stood outside of a vehicle as pedestrians on a street late at night. In this context, the officers' activation of emergency lights did not transform their initial consensual encounter with Cade and T.J. into a seizure.

As for blocking T.J.'s car, such tactics can contribute to non-consensual stops of parked cars, even when occupants have exited their cars. See, e.g., *United States v. Green*, 111 F.3d

515, 517 (7th Cir. 1997) (officers parked to block driveway where driver had just exited his own vehicle); *United States v. Pavelski*, 789 F.2d 485, 488–89 (7th Cir. 1986) (three police cars blocked car that suspect had exited). In this case, however, Cade and T.J. had been outside the car all along, and by stopping in the street, the officers were necessarily going to block in at least one or two cars no matter where they stopped. The district court found that a reasonable person in Cade's position, as a pedestrian approached by officers in the manner they did, would have believed he was free to leave, at least on foot. That finding was not clearly erroneous.

B

Notwithstanding the consensual encounter, Cade next argues that his statements should be suppressed because the officers did not have reasonable suspicion to seize him near the rear of the sedan and handcuff him to T.J. See *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The government disagrees, countering that the officers had the reasonable suspicion needed to effectuate an investigatory stop. We need not decide whether any seizure at the back of the sedan was unlawful, however, because the statements Cade seeks to suppress were attenuated from any allegedly unlawful conduct. See *United States v. Reed*, 349 F.3d 457, 463 (7th Cir. 2003) ("A confession obtained through custodial interrogation after an illegal arrest must be excluded from evidence unless the confession is attenuated enough from the illegal arrest."); see also *United States v. Liss*, 103 F.3d 617, 620 (7th Cir. 1997) ("We need not decide whether the police exceeded the scope of Liss's consent … because we find that Liss's subsequent consent to search his home purged the evidence seized under the warrant of any taint from the illegal search of the barn."). While the government raises

attenuation for the first time on appeal, Cade did not file a reply brief to address the issue or to argue waiver. Regardless, the government, as appellee, may present new arguments for affirmance when the district court record is adequately developed, even if the argument was not presented before the district court. See *United States v. Gaines*, 918 F.3d 793, 803 n.11 (10th Cir. 2019). Here, all the facts pertinent to attenuation were before the district court. In evaluating attenuation, we consider "the temporal proximity of the illegal conduct to the statements, the presence of any intervening circumstances, and, most importantly, the purpose and flagrancy of the police misconduct." *Reed*, 349 F.3d at 463.

Recall that Cade was directed toward the rear of the sedan shortly after T.J. admitted that her cup contained alcohol. Officer Myers then noticed, in plain view, an unsealed bottle of tequila on the floor by the backseat of the sedan. At that point, the officers had probable cause to search the sedan for additional contraband or evidence. See 625 Ill. Comp. Stat. 5/11-502(a) ("[N]o driver may transport, carry, possess or have any alcoholic liquor within the passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken."); *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992) ("Once Trooper Newman discovered that McGuire was transporting open, alcoholic liquor in violation of Illinois law … he had probable cause to believe that the car contained additional contraband or evidence."). Upon conducting the lawful search, Officer Myers found Cade's firearm. Only after that discovery, and after acknowledging that he understood his *Miranda* rights, did Cade make the incriminating statements he now seeks to suppress.

First, we acknowledge that if Cade was unlawfully seized, the temporal proximity factor weighs against attenuation. But this single factor is not dispositive. See *United States v. Carter*, 573 F.3d 418, 425 (7th Cir. 2009) ("We have previously held that a search was attenuated from illegal conduct even where only a few minutes passed between the conduct and the search.") (citing *United States v. Parker*, 469 F.3d 1074, 1078–79 (7th Cir. 2006)). Moreover, the incriminating statements were made in such a short period because Officer Myers found the gun only a few minutes after Cade was moved to the rear of the vehicle.

Next, there were significant intervening circumstances between Cade's allegedly unlawful seizure and his incriminating statements. The officers saw open alcohol in the rear passenger compartment of T.J.'s sedan and conducted a lawful search supported by probable cause. During the search, the officers found a bag bearing a striking resemblance to the one they had previously seen on Cade's person, but which Cade affirmatively denied ever holding. The officers then found a gun in that bag. After the officers read Cade and T.J. their *Miranda* rights, Cade confessed that he owned the gun but lacked the required license. Though Cade's confession would not have occurred but for his allegedly unlawful seizure at the back of the sedan, a but for cause does not automatically taint evidence and compel suppression. See *United States v. Meece*, 580 F.3d 616, 619 (7th Cir. 2009) ("Evidence is not automatically tainted 'simply because it would not have come to light but for the illegal actions of the police.'") (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)); *Liss*, 103 F.3d at 620 ("[T]he Supreme Court has rejected a 'but for' test of suppression."). Rather, the independent recovery of the gun pursuant to a lawful search constituted a wholly intervening set

of circumstances that "sever[ed] the causal connection" between the seizure and Cade's *Mirandized* statements. *Reed*, 349 F.3d at 464 (citation omitted); see also *id.* (remarking that the "discovery of other incriminating evidence implicating the defendant and causing the defendant to confess spontaneously" constituted an intervening circumstance) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 108–09 (1980)); *United States v. Conrad*, 673 F.3d 728, 734 (7th Cir. 2012) (noting that while *Miranda* warnings alone are not sufficient for attenuation, they "can nonetheless be a relevant consideration" with regard to intervening circumstances).

The final factor, the purpose and flagrancy of the police misconduct, likewise favors attenuation. This "most important" factor asks whether law enforcement acted in bad faith. *United States v. Davis*, 44 F.4th 685, 689 (7th Cir. 2022) (quotation omitted). "This inquiry matters because we do not employ the exclusionary rule when 'suppression would do nothing to deter police misconduct.'" *Id.* (quoting *Davis v. United States*, 564 U.S. 229, 232 (2011)). There is simply no evidence of bad faith by the officers in this case, and Cade makes no developed argument to the contrary. The officers reasonably engaged with Cade and T.J., had probable cause to search T.J.'s vehicle, and read Cade his *Miranda* rights before he made his incriminating statements. See *Conrad*, 673 F.3d at 736 (finding that a reading of *Miranda* rights supported attenuation under the purpose and flagrancy factor). Cade's incriminating statements were sufficiently attenuated from his allegedly unlawful seizure, and suppression is unwarranted.

C

One final point. The district court did not abuse its discretion by denying an evidentiary hearing before deciding

Cade's motion to suppress. A district court need only conduct an evidentiary hearing when "a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018) (quotation omitted).

Cade raises two factual disputes: (1) whether the tequila bottle in the back of the sedan was unsealed and (2) whether he obstructed traffic. Because Cade concedes that he lacks standing to challenge the search of the sedan, whether the tequila bottle was unsealed is irrelevant. And as discussed above, the officers' initial encounter with Cade and T.J. was consensual, with the remainder of the encounter stemming from T.J.'s open container of alcohol. Thus, whether Cade obstructed traffic is likewise irrelevant. Without any material factual disputes, an evidentiary hearing is not needed.

AFFIRMED